IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAMMY BREWSTER,

                             Plaintiff,                     OPINION AND ORDER

   v.

                                                    07-cv-622-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one.

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Tammy Brewster seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the judge made a flawed credibility finding,

1

improperly considered evidence related to her headaches, seizures and mental impairments in making his residual functional capacity assessment, improperly rejected the opinions of her treating physicians, made erroneous step four and step five determinations and improperly relied on the vocational expert's testimony.  Plaintiff also seeks a sentence six remand for consideration of additional evidence.

Because the administrative law judge built an accurate and logical bridge between the evidence and his conclusion that plaintiff's testimony about her limitations was not credible, the credibility determination was not patently wrong.  I find that the administrative law judge properly considered and weighed the evidence related to plaintiff's headaches, seizures and mental impairments in making his residual functional capacity assessment.  I also find that the administrative law judge did not err in making his step four determination and properly relied on the vocational expert's testimony in finding plaintiff not disabled.  Because the administrative law judge properly found plaintiff not disabled at step four, his step five determination was unnecessary and any error that he may have made at that step is harmless.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.  I also am denying plaintiff's motion for a sentence six remand because the additional evidence submitted by plaintiff is not material.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental Security Income on April 5, 2004 alleging that she had been unable to work since November 15, 2000 because of headaches.  AR 49, 55.  Plaintiff was born on August 19, 1969.  AR 49. Plaintiff has an eleventh grade education and her past work includes work as a dog groomer, cashier, receptionist, cashier and stocker.  AR 61, 470.

Plaintiff performed some work activity after the alleged onset date of her disability. She worked as a clerk at Quick N Save from April 25, 2001 to May 1, 2001 and as a part-time receptionist at H & R Block from December 15, 2001 to April 15, 2002 and December 15 to 30, 2002.  Plaintiff worked as a dog groomer until 2003.  She also worked as cashier in 2001.  AR 16-17.

After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 19, 2006 before Administrative Law Judge Robert Bartelt  in Madison, Wisconsin.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  He also heard testimony from her boyfriend's mother and a vocational expert.  AR 441.  On January 24, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 17-

27.  This decision became the final decision of the commissioner on September 7, 2007, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

### B.  Medical Evidence

In November 2000, plaintiff was injured in a motor vehicle accident and subsequently treated by Dr. R. J. Braco at the Beloit Clinic Occupational Medicine Department.  Braco noted that plaintiff had tenderness at the right thoracic outlet near the base of her neck, normal healing of a left scalp wound and right arm and shoulder pain that appeared to be a thoracic outlet syndrome with tight muscles at the base of the neck.  AR 144.

On December 1, 2000, plaintiff began physical therapy at the Beloit Memorial Hospital Physical Medicine and Rehabilitation Department.  AR 119.  On December 12, 2000, plaintiff reported working four-hour shifts as a cashier and by January 2001, she was working eight-hour shifts.  AR 140-42.  Plaintiff attended 20 physical therapy sessions and stopped treatment on January 31, 2001, when the physical therapist noted that plaintiff had met all the goals of the physical therapy plan.  On February 6, 2001, Braco reported that plaintiff had healed well and her work capability was restored.  AR 105, 138.

On June 6, 2001, plaintiff reported to Dr. Braco that she was having headaches along her left temple three times a month, requiring her to rest a half an hour and take pain medication.  Braco noted that plaintiff had quit her job because the work hours were too

long (1:00 p.m. to 10:00 p.m.) but that she was able to drive safely. AR 136. In August 2001, plaintiff reported that her headaches were accompanied by dizziness and a spinning sensation. At times, plaintiff's headaches crossed over to the right side of her head. AR 134. On September 19, 2001, plaintiff reported that the left side of her head throbs two to three times a week but her headaches were less severe and less frequent than they were six months before. She also reported only a "small amount of dizziness" that improved if she ate something. Braco noted that plaintiff was working 28 to 32 hours a week as a cashier and stated that she could continue working with no limitations. He also stated that atenolol worked well to prevent her headaches. AR 132.

Plaintiff did not seek any medical treatment for the next two years. On December 2, 2003, plaintiff returned to Dr. Braco reporting that her headaches had become more frequent over the preceding six months. She reported pain spreading from her left temple into her right eye. Braco noted that "[m]edication [was] helpful at both treatment and prevention." AR 130. He prescribed atenolol and adalat and in case of a big headache or emergent pain, recommended axert. On December 22, 2003, plaintiff underwent a magnetic resonance imaging test of her head that indicated that she had a brain lesion. AR 186. On December 30, 2003, Braco wrote that plaintiff's headaches were "severe about once a week, but she gets a good response to taking atenolol twice a day and Adalat once a day. Axert works fine about once a week, taking 1 or 2 tablets." AR 127. Braco recommended that

plaintiff continue the atenolol and adalat until her headaches were completely prevented. He also stated that she could continue to work six hours a week as a dog groomer. AR 127-28.

On February 2, 2004, plaintiff reported fewer headaches and having used axert only once since December. She was working 16 hours a week as a dog groomer. Braco increased her atanolol, adalat and depakote and told her to use no more than six tablets of axert in one month. AR 125-26. In March and April 2004, plaintiff reported headaches with right eye twitching. She was dog grooming about four hours a week during that time and was able to keep up with her four-year old grandson. AR 121-124.

On July 14, 2004, plaintiff began seeing Dr. Krzysztof Goetzen at the Department of Neurology in the Beloit Clinic. AR 207-15, 315-21. Goetzen noted that plaintiff complained of headaches located in the left temporal region. AR 215. On August 24, 2004, a second imaging test indicated no change. AR 184. On September 7, 2004, plaintiff underwent a magnetic resonancing spectroscopy that revealed an unusual appearing lesion. AR 200. She continued to report headaches in her left temple region and on the right side. AR 207-10. On October 12, 2004, plaintiff underwent a magnetic resonance functional scan of her head that revealed a right parietal operuclar lesion. AR 193-98.

On October 21, 2004, Dr. Grant Sinson, a neurosurgeon, diagnosed plaintiff with a right parietal lesion that was identified after a history of progressively increasing severe and

frequent headaches.  He recommended a right craniotomy and excision of the lesion. Sinson's neurological examination of plaintiff revealed no abnormalities.  AR 201-02.  On November 1, 2004, plaintiff told Dr. Maraina Spanaki-Varelas that she had had headaches and seizures twice a day every day for the last four years with a notable increase after November 2003.  Plaintiff reported that her headaches began behind her right eye, caused her eye to twitch and then progressed over her head and into her left temple.  Plaintiff also reported that her headaches cause her to feel lightheaded, nauseated and as though she will lose consciousness.  She stated that these symptoms will not stop unless she lies down for three to five minutes.  AR 219.

In November 2004, Dr. Sinson performed a biopsy and resection of plaintiff's intra cranial  lesion.  AR 216-217.  After surgery, plaintiff complained of eye blinking and dizziness, which she believed represented seizure activity.  Because an electroencephalogram did not reveal seizures, Sinson diagnosed plaintiff with psychogenic seizures.  AR 217.  On November 9, 2004, Sinson advised plaintiff that the biopsy indicated that the lesion was a cortical dysgenesis.  AR 268.  In a November 9, 2004 letter to Dr. Sheree Lauth, Sinson stated that plaintiff "feels like she has had some improvement of her headaches though this may be related to changes in medications done by Dr. Spanaki-Varelas."  AR 268.  In November 2004, plaintiff told Dr. Goetzen that her headaches had improved with

medication.  AR 315.  Five months later, she reported that she was feeling quite well, although she still had some discomfort at the surgical site.  AR 317.

In May 2005, plaintiff asked Dr. Braco to adjust her medications.  AR 323.  In the summer of 2005, plaintiff reported that her headaches and dizziness had become somewhat more frequent (occurring four times a week) but less severe.  Braco advised plaintiff not to regularly climb heights, work alone or drive while dizzy.  He also reported to the Rock County Job Center that plaintiff could lift five pounds with each hand, do three hours of activity a day at the job center (one hour standing and two hours sitting), an hour of job searching each week and seven hours of curriculum work at home each week.  AR 325.

In October 2005, plaintiff complained to Dr. Goetzen of right-sided headaches of varying intensity and less frequent episodes of confusion.  AR 319.  On December 30, 2005, she told Dr. Braco that she had headaches on the right side followed by one-half hour long dizzy spells.  Although plaintiff stated that she was doing a homebound curriculum for her general equivalency diploma, she had not performed any dog grooming recently and had not worked outside her home for the past four years.  Braco noted that plaintiff would rather study at home than search for employment or work outside the home.  He also noted that plaintiff could easily lift ten pound weights with each arm and was able to work four hours a day, one day a week.  AR 328-29.

On January 20, 2006, plaintiff told Dr. Goetzen that her right parietal headaches were mild, she felt more energetic and less sleepy and she planned to return to her previous job as a dog groomer.  Goetzen noted that plaintiff had some mild confusion associated with anxiety and recommended that she see a psychiatrist for anxiety.  AR 320-21.

In March 2006, Dr. Braco reported to Lorraine Halverson at the Rock County Job Center that plaintiff could perform 20 hours of educational and employment activities each week.  Braco stated in his treatment note that he had called plaintiff twice "to see why she wanted zeroes put down on the forms."  AR 333.  On May 2, 2006, plaintiff complained of daily right-sided headaches, constant fatigue and dizziness.  Noting plaintiff's reported fatigue after long days, anxiety if she pushed herself and an upcoming brain imaging study, Braco stated on forms for the job center that plaintiff should reduce her employment and educational hours from 26 to 13 a week.  AR 335.  In August 2006, plaintiff described her headaches as occurring frequently but reported that she had not needed to take her replax that month and was driving a car.  AR 338.

On August 21, 2006, Dr.Braco examined plaintiff and completed another report for the Rock County Job Center, indicating that plaintiff could work 12 to 13 hours a week for the next six months.  He also noted that until plaintiff felt like she could do more without dizziness or tiredness, she was limited to walking two hours a day and sitting four hours a (a total of six hours maximum).  AR 338.

## C. Consulting Physicians

On May 10, 2004, Dr. Michael Baumblatt, a state agency consulting physician, completed a physical residual functional capacity assessment for plaintiff. He concluded that plaintiff had no exertional limitations but could never climb ladders, ropes or scaffolds and should avoid concentrated exposure to hazards. AR 147-54.

On May 18, 2004, Dr. Jack Spear, a state agency consulting psychologist, completed a psychiatric review technique form for plaintiff. He found that plaintiff had no medically determinable mental impairment. AR 155.

On January 28, 2005, a state agency consulting physician indicated that plaintiff had migraine headaches and psychogenic seizures. AR 273. He concluded she could occasionally lift 20 pounds, frequently lift ten pounds, sit six hours in an eight-hour work day and stand or walk six hours in an eight-hour work day. AR 274. He also found that she could never climb ladders, ropes or scaffolds and should avoid even moderate exposure to hazards. AR 275, 277.

On January 31, 2005, Dr. William Merrick, a state agency consulting psychologist, found plaintiff had a mental impairment of somotoform disorder manifested by psychogenic seizures. AR 287. Merrick concluded that plaintiff had no restriction of activities of daily

10

living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace and one or two episodes of decompensation.  AR 201.

### D.  Hearing Testimony

Plaintiff testified that her headaches began after her motor vehicle accident in 2000 but then went away.  She testified that in 2003, she began experiencing severe daily headaches on her right side.  Plaintiff stated that the pain traveled across her head to the left side.  Plaintiff testified that after she had brain surgery in 2004, her headaches became worse.  About two months after the surgery, plaintiff started getting headaches on the right side of her head, her eye started twitching and she got dizzy spells.  The pain did not travel to the left side of her head until four or five months before the hearing.  When she got a headache, she would lie down for two to three hours.  Plaintiff testified that she always has had to take daily naps because of fatigue.  AR 445-50.

Plaintiff lives with her boyfriend and six-year old son.  She testified that on a typical day, she gets her son ready for school and puts him on the school bus, lies down for two or three hours and then cleans her house until she feels a spell coming on.  Plaintiff stated that she forgets things, including whether she has given her son medication and appointments. AR 450-52.  She testified that she had a driver's license and was working on obtaining her

general equivalency diploma.  AR 457.  Plaintiff also stated that she went to the grocery store and Wal-Mart.  AR 462.

Plaintiff testified that she had had a dog grooming business for two months and only groomed one dog.  AR 452-53.  When asked additional questions about her dog grooming business, plaintiff testified that from April 2002 to August 2003, she groomed seven to eight dogs weekly, and that from August 1, 2003 until summer 2004, she groomed dogs four days a month.  AR 459.

Plaintiff described a calendar that she had submitted as an exhibit on which she had written down when she had headaches or dizzy spells that caused her to lie down.  AR 454.  Plaintiff testified that she used the same pen each time she wrote an entry because she kept the pen by the calendar.  AR 444.

Plaintiff testified that her treating physician was Dr. Braco but that she saw her neurosurgeon, Dr. Sinson, once a year.  She also testified that Dr. Goetzen was her neurologist.  AAR 461.  Plaintiff testified that although Goetzen had recommended that she see a psychiatrist, she forgot to do it.  AR 462.  Janet Hinze, the mother of plaintiff's boyfriend, testified that three or four times a week, she helped plaintiff take care of her son when she had a spell.  AR 465-68.

Allen Searles, a neutral vocational expert, testified that dog grooming is semiskilled and medium exertional level work; cashier and stocker are semiskilled and light exertional

level work; and receptionist is semiskilled and sedentary exertional level work.  He stated that the physical demands and job duties described by plaintiff are consistent with the descriptions in the Dictionary of Occupational Titles.  The administrative law judge asked whether these jobs could be performed by an individual of plaintiff's age, education and work experience who is limited to light or sedentary work with no climbing, working at heights, driving, operating heavy machinery, working in close proximity to dangerous or unguarded machinery or working alone.  Searles testified that this individual could perform the receptionist and cashier jobs.  AR 470.

When the administrative law judge added the restrictions of simple, low-stress repetitive work, Searles testified that statewide, such an individual could perform 3,510 light mail clerk jobs, 7,910 light counter clerk jobs, 68,850 light assembly jobs, 6,080 sedentary electrical assembly jobs, 10,570 sedentary surveillance monitor jobs and 11,260 sedentary order clerk jobs.  AR 471.  Finally, the administrative law judge asked Searles whether there were jobs that could be preformed by an individual that had the limitations described by plaintiff in her testimony.  Searles said that there were none because the daily naps, fatigue and dizziness would prevent the individual from working.  AR 472.


E.  Post-Hearing Submissions


13

On July 20, 2007, plaintiff submitted additional evidence to the Appeals Council. AR 415.  She submitted Beloit Area Community Health Center records dated January 24, 2007 through July 12, 2007.  These records reveal that plaintiff was diagnosed with major depressive disorder.  AR 416.  The records include counselor Paula Flaherty's treatment notes.  AR 424-40.

## F.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. §§ 404.1520, 416.920.  At step one, he found that plaintiff had performed some work activity after the alleged disability onset date.  He noted that plaintiff reported she had been working as a dog groomer from 1991 to 2003. He also indicated that she had worked at other jobs after her onset date, including as a part-time receptionist at H&R Block.  The administrative law judge stated that plaintiff's part-time work at H&R Block did not appear to be presumptive substantial gainful activity.  The administrative law judge stated that he could not reach a factual conclusion about plaintiff's substantial gainful activity without obtaining further evidence. However, because he found plaintiff not disabled, the administrative law judge reserved ruling on that issue.

14

At step two, the administrative law judge found that plaintiff had severe impairments of status post injury, cortical dysgenesis status post resection, "possibly migraine headaches" and psychogenic seizures. The administrative law judge discussed at length the medical evidence concerning plaintiff's headaches. He found that plaintiff originally complained of headaches after her November 2000 motor vehicle accident, underwent physical therapy until January 31, 2001 and with Braco's approval, continued working eight-hour shifts during this period. The administrative law judge noted that in June 2001, plaintiff reported having headaches about three times a month. He then noted that plaintiff testified that her headaches went away but returned in November 2003. The administrative law judge pointed out that after plaintiff's brain surgery in 2004, she reported to Dr. Goetzen that her headaches had improved and responded quite well to the medication, and that in January 2006, she told Goetzen that her headaches were mild and that she was planning to return to work.

At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and that her psychogenic seizures are a somotoform disorder but not one that meets the requirements of the listing. He relied on the opinion of state agency consultant Spear that plaintiff did not have a severe mental impairment. Also, he found that plaintiff had only mild restrictions of the activities of daily living and difficulties in maintaining

15

concentration, persistence or pace and no other limitations.  He noted that he allowed for the physical manifestations of the "seizures" in the residual functional capacity assessment by limiting the plaintiff to a nonhazardous workplace.

At step four, the administrative law judge assessed plaintiff's residual functional capacity.  He found that plaintiff could perform work at all exertional levels in a nonhazardous work setting but that she could not drive, climb, work at heights or work alone.  In making this assessment, the administrative law judge considered plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms pursuant to Social Security Ruling 96-7p and concluded that they were not entirely credible.  Specifically, the administrative law judge noted the following points, which I have paraphrased.

- Although plaintiff testified that she had had no improvement in her headache symptoms since her brain surgery, the treatment notes indicated some improvement.

- The treatment notes indicated that even before the surgery the frequency, severity of headaches and response to medication was better than plaintiff's testimony suggested.

- Plaintiff told "divergent and contradictory stories" about the frequency, severity and type of headaches she suffered.  Originally, she attributed them to the motor vehicle accident but then reported they had gone away only to recur in November 2003.  On November 4, 2004, she told Dr. Spanaki -Varelas that she had had headaches two times a day every day over the previous, contradicting other reports she had made.

16

- The exhibit that plaintiff submitted recording her headaches appeared to have been prepared at one time: every day was marked with the same color ink and same writing.

- 

- When questioned by her attorney at the hearing, plaintiff testified that she groomed only one dog a month for two months. However, when questioned by the administrative law judge, she testified that she performed dog grooming until well into 2004.

- Plaintiff testified that she lies down only if a headache is severe but then she changed her testimony to say that she lies down daily whether she has a headache or not.

- Dr. Braco's treatment note of March 15, 2006 indicates that plaintiff wanted him to put zeros for the amount of hours she could work in his report to the Rock County Job Center in support of her request for Wisconsin Works (W-2) benefits. However, as of May 2, 2006, plaintiff was at the job center a total of 28 hours a week.

In determining plaintiffs' residual functional capacity, the administrative law judge considered Dr. Braco's August 21, 2006 assessment that plaintiff could work only 12 to 13 hours a week and could walk only two hours a day and sit for only four hours a day. However, the administrative law judge did not give controlling weight to that opinion because he found that it inconsistent with the objective evidence, Braco's ongoing progress notes or claimant's self-reported abilities. He pointed out that in 2005, Braco had indicated that plaintiff could lift 20 pounds easily and that plaintiff "would like to do more classroom work and GED program-type work than real employment." AR 22. Further, as of May 2,

17

2006, Braco noted that plaintiff was performing educational and job search tasks for a total

of 28 hours a week.  The administrative law judge noted:

> The possibility always exists, and it appears this is the case here,
> that a doctor may express an opinion in an effort to assist a
> patient with whom he or she sympathizes for one reason or
> another.  Another reality that should be mentioned is that
> patients can be quite insistent and demanding in seeking
> supportive notes or reports from their physicians, who might
> provide such a note in order to satisfy their patient's requests
> and avoid unnecessary doctor/patient tension.  While it is
> difficult to confirm the presence of such motives they are more
> likely in situations where the opinion in question departs
> substantially from the rest of the evidence of record, as in the
> current case.

AR 22.

The administrative law judge also considered the opinions of the state agency

physicians and psychologists in determining plaintiff's residual functional capacity.  He

found their opinions well-grounded and generally consistent with the record.

Relying on the testimony of the vocational expert, the administrative law judge found

that plaintiff retained the residual functional capacity to perform her past relevant work as

a receptionist, cashier and stocker as that work was performed generally.  He found that

plaintiff's past work had lasted long enough for her to learn how to do the jobs and met the

definition of substantial gainful activity.  20 C.F. R. §§ 404.1565, 416.965.  In addition, the

administrative law judge noted that the vocational expert had testified that those jobs

18

generally are performed in a nonhazardous work setting (no driving, climbing or work at heights) and did not require working alone.  AR 23.

The administrative law judge went on to make a step five finding.  Relying on the vocational expert's testimony, he found that even if plaintiff could perform only simple, low-stress repetitive work, significant numbers of jobs as a clerk and assembler (both sedentary and light) existed statewide that plaintiff could perform.  AR 23.  The administrative law judge added that "[b]efore relying on the vocational expert evidence, the undersigned ascertained that there were no conflicts pursuant to SSR 00-4p."  AR 24.


OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d

19

863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Credibility

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms

20

limit the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); <u>see also</u> <u>Scheck v. Barnhart</u>, 357 F.3d 697, 702 (7th Cir. 2004). When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms solely on the ground that the statements are not substantiated by objective medical evidence. Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). <u>See also</u> <u>Scheck</u>, 357 F.3d at 703; <u>Zurawski</u>, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. <u>Shramek v. Apfel</u>, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong." <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006); <u>Sims v. Barnhart</u>, 442

21

F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff argues that the administrative law judge assigned the wrong onset date to her disability when he was determining her credibility.  She argues now that she became unable to work on December 1, 2003.  However, she did not amend her alleged onset date and her application states that she became disabled in November 2000.  In any event, the administrative law judge has built an accurate and logical bridge between the evidence and his conclusion that plaintiff's testimony concerning her symptoms and limitations are not credible.

In his decision, the administrative law judge addressed several discrepancies between plaintiff's testimony and her medical records that he considered probative of her credibility. He found that the treatment notes indicated that before plaintiff's surgery, the frequency and severity of her headaches and her response to medication was better than her testimony indicated.  Plaintiff contends that the judge focused only on medical reports that favored his

conclusion.  However, there is ample evidence from which the administrative law judge could conclude that plaintiff experienced less frequent or severe headaches than she claimed.

The administrative law judge noted that plaintiff had testified that she continued to have severe headaches since her surgery in November 2004.  However, after having surgery, she told Dr, Goetzen that her headaches had improved with medication, and five months later, she reported that she was feeling quite well.  Dr. Sinson also noted that plaintiff's headaches improved after her surgery.  On January 20, 2006, plaintiff told Dr. Goetzen that her right parietal headaches were mild, she felt more energetic and less sleepy and she planned to return to her previous job as a dog groomer.  The administrative law judge noted that although plaintiff testified that her headaches went away in 2000 and returned in November 2003, she told Spanaki-Varelas on November 4, 2004 that she had had headaches twice a day for the previous four years.  He also pointed out that plaintiff first testified that she lies down when she gets a severe headache but later testified that she lies down every day, even if she does not have a headache.

The administrative law judge cited plaintiff's contradictory testimony at the hearing concerning her work as a dog groomer.  When questioned by her attorney, plaintiff testified that she had groomed only one dog a month for two months.  However, when questioned further by the administrative law judge, she testified that she had groomed dogs regularly until 2004.  She specifically stated that from April 2002 to August 2003, she groomed seven

23

to eight dogs weekly and from August 2003 to summer 2004, she groomed dogs four days a month.  Plaintiff's testimony also is inconsistent with her earlier reports to her physicians.  On February 2, 2004, plaintiff reported that she was working 16 hours a week as a dog groomer, and in March and April 2004, she reported working four hours a week.

Dr. Braco's March 15, 2006 treatment note also led the administrative law judge to question plaintiff's truthfulness.  Dr. Braco noted that plaintiff had asked him to put down "zeros" on his report to the Rock County Job Center in support of plaintiff's request for Wisconsin Works (W-2) benefits.  However, as of May 2, 2006, plaintiff was at the job center a total of 28 hours a week.  Dr. Braco ended up recommending that plaintiff reduce her hours to 13 a week.

Finally, the administrative law judge questioned the veracity of plaintiff's exhibit, a calendar on which she had recorded the frequency of her headaches and dizziness between December 2004 and October 2006.  The judge noted that each entry was written uniformly and in the same color ink.  Although plaintiff testified that she kept the same pen by the calendar, it was reasonable for the administrative law judge to conclude that plaintiff had not recorded her headaches and dizziness as they occurred over the course of almost two years.

These findings are well founded and provide a reasonable basis for the administrative law judge's conclusion that plaintiff was not entirely credible.  In addition, the administrative law judge had other good reasons for not finding plaintiff credible.  Contrary to plaintiff's

24

assertion, he considered many of the relevant factors listed in SSR 96-7p.  The administrative law judge noted that plaintiff gets her child ready for school, cleans the house, drives, grocery shops and goes to Wal-Mart.  He also wrote that despite her symptoms, plaintiff was able to work part time as a dog groomer through 2004 and perform educational and job search tasks several hours a week.  Plaintiff's performance of the above activities, even for limited period, is still evidence that her alleged symptoms are not as severe as she claims and that she is capable of performing her past work.  As previously discussed, the administrative law judge also considered the fact that plaintiff responded well to her medications and that she overstated and gave conflicting reports about the duration, frequency and intensity of her symptoms.

Even if the administrative law judge technically erred by failing to address all of the SSR 96-7p factors, this error was harmless.  Plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.  The administrative law judge was not patently wrong.  He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's allegation of disabling fatigue was not persuasive.

C.  Residual Functional Capacity Finding

Plaintiff asserts that the administrative law judge  failed to consider the impact of her headaches and mental impairments when he determined her residual functional capacity. The determination of residual functional capacity is an assessment of what work-related activities plaintiff can perform despite her limitations.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  It must be based on all the relevant evidence in the record.  Id.

1.  Headaches

Plaintiff argues that the administrative law judge did not properly consider plaintiff's headaches.  The administrative law judge found that plaintiff had a severe impairment of "possibly migraine headaches."  AR 17.  Plaintiff argues that it is unclear whether the administrative law judge meant that her headaches were possibly migraine or possibly severe. However, in making his residual functional capacity finding, the administrative law judge wrote:

> Disability is alleged on the basis of headaches and also related "spells," which the claimant describes as dizziness, eye twitching, and faint feeling, like "floating on a cloud." . . . After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. . .

26

AR 20.  Given these statements and the administrative law judge's two-page discussion of the evidence related to plaintiff's headaches, I am satisfied that he considered plaintiff's headaches to be a severe impairment.

Plaintiff argues that even if the administrative law judge found her headaches to be severe, he did not properly consider them in determining her residual functional capacity. However, as discussed in the previous section, the administrative law judge considered plaintiff's alleged functional limitations resulting from her headaches and rejected them as not credible.  Further, the consulting physicians did not find that plaintiff had any exertional limitations because of her headaches.

Plaintiff points to Dr. Braco's August 21, 2006 assessment that she could work only 12 to 13 hours a week, walk two hours a day and sit four hours a day.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece

27

of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.  Id.  He also must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge did not give controlling weight to Dr. Braco's opinion because he found that it was not consistent with the objective evidence, Dr. Braco's ongoing progress notes or claimant's self-reported abilities.   Given these inconsistencies, the administrative law judge concluded that Dr. Braco's sympathy for plaintiff influenced his opinion.  I find that the administrative law judge had good reasons for not adopting Dr. Braco's opinion.

The administrative law judge pointed out that in 2005, Dr. Braco indicated that plaintiff could lift 20 pounds easily and "would like to do more classroom work and GED program-type work than real employment."  AR 22.  In January 2006, plaintiff told Dr. Goetzen that her right parietal headaches were mild, she felt more energetic and less sleepy and she planned to return to her previous job as a dog groomer.  Although plaintiff asked Dr.

28

Braco in March 2006 to indicate that she could not put in any hours for the job center, Dr. Braco stated that plaintiff could perform 20 hours of educational and employment activities each week.  As of May 2, 2006, plaintiff was putting in 26 employment and educational hours a week.  After plaintiff complained of daily headaches, constant fatigue and dizziness, Dr. Braco limited her to 13 hours a week.  In some of the last progress notes of record (August 2006), Dr. Braco noted that plaintiff could work 12 to 13 hours a week for the next six months.  The administrative law judge also pointed out that plaintiff reported to Dr. Braco in August 2006 that although she had had frequent headaches, she did not have to take replax that month and was driving a car.

Further, Dr. Braco's assessed limitations for plaintiff were based on her self-reported symptoms and were to remain in effect until *she "felt* like she could do more without dizziness or tiredness."  AR 338 (emphasis added).  It is well-settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility. Diaz v. Chater, 55 F.3d 30 0, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's

29

self-reported symptoms" and was not supported by the objective medical evidence); <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations  may be disregarded where those complaints have been properly discounted).  Because the administrative law judge properly discounted plaintiff's subjective statements as not credible, it follows that he could reject any opinions that were based on those statements.

Plaintiff also asserts that the testimony of Janet Hinze, her boyfriend's mother, corroborates her testimony about the effects of her headaches.  However, as with Dr. Braco, Hinze's testimony was based on plaintiff's self reports and the administrative law judge reasonably gave it little weight.

In sum, because there was no credible evidence in the record that plaintiff's headaches limited her ability to work, the administrative law judge did not err in making a residual functional capacity determination that did not include any limitations regarding plaintiff's dizziness, eye twitching and feeling faint.

2.  <u>Mental impairment</u>

Plaintiff claims that the administrative law judge incorrectly considered her seizures a convulsive disorder instead of a mental disorder because he limited her to a nonhazardous

30

workplace.  She asserts that the administrative law judge should have considered the fact that her dizziness, eye twitching or feeling faint require her to lie down two or three times a week and included it as a functional limitation.  I disagree.

The administrative law judge clearly found that plaintiff had a mental impairment, namely somotoform disorder manifested by psychogenic seizures.  He determined that although the somotoform disorder did not meet or equal the requirements of the listings, it mildly affected her activities of daily living and difficulties in maintaining concentration, persistence or pace.  He also concluded that the plaintiff had limitations based on the physical symptoms (seizures) of this impairment.  The administrative law judge accounted for these symptoms by finding that plaintiff could not work around hazards or alone.

Although there is medical evidence supporting a diagnosis of psychogenic seizures, there is no objective medical evidence that plaintiff's seizures required her to lie down three times a week.  As discussed previously, the administrative law judge properly found plaintiff's self reports of dizziness, eye twitching and feeling faint to be less than credible.  Therefore, he did not err in excluding a limitation relating to plaintiff's need to lie down from his residual functional capacity assessment.

Plaintiff also contends that the administrative law judge failed to fully develop the record regarding her mental impairment, including her anxiety.  When a plaintiff is represented by an attorney, the administrative law judge is entitled to assume that the

31

attorney will make a request for a consultative expert if he or she deems it important.  Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (administrative law judge can assume that applicant represented by counsel is "making his strongest case for benefits").  Further, respondent correctly notes that the administrative law judge must consult a medical expert only if he concludes that the evidence before him is insufficient to make a determination.  20 C.F.R. § 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).

In this case, the administrative law judge had sufficient evidence before him to determine the limitations of plaintiff's mental impairments.  One consulting state agency psychologist determined that plaintiff did not have a severe mental impairment.  Another state agency psychologist determined that plaintiff had a somototorm disorder with only mild limitations.  There is no evidence in the record that plaintiff had any mental impairment other than psychogenic seizures.  Although Drs. Braco and Goetzen referred to plaintiff being anxious or nervous, neither diagnosed her with anything but psychogenic seizures.  As plaintiff points out, Dr. Goetzen noted in January 2006 that plaintiff appeared anxious and he recommended that she see a psychiatrist.  However, plaintiff did not seek psychiatric treatment prior to the hearing.  Accordingly, the administrative law judge was not required to further develop the record with regard to plaintiff's mental impairments.

32

E.  <u>Ability to Work</u>

1.  <u>Step four</u>

At step four of the sequential evaluation process for determining disability, the administrative law judge must make findings of fact about the individual's residual functional capacity, the physical and mental demands of the past job and whether the individual's residual functional capacity would permit a return to the past job.  Social Security Ruling 82-62; <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir. 1984).  Past relevant work is defined as work that has been done within the past 15 years, was substantial gainful activity and lasted long enough for the person to have learned how to do it.  20 C.F.R. §§ 404.1560(b)(1), 404.1565(a), 416.960(b)(1), 416.965(a); <u>Smith v. Barnhart</u>, 388 F.3d 251, 252 (7th Cir. 2004).

Plaintiff argues that the administrative law judge should not have considered her past work as a receptionist because it was not substantial gainful activity.  She points out that at step one, the administrative law judge found that her work as a receptionist at H & R Block was part time and not presumptive substantial gainful activity.  He then reserved ruling on whether plaintiff engaged in substantial gainful activity since November 15, 2000, her alleged disability onset date (step one).  AR 16.  The regulations generally provide that if an individual has worked for substantial earnings, she will be presumed able to do substantial gainful activity.  20 C.F.R. 1574(a)(1).  However, the fact that a claimant's "earnings were

33

not substantial will not necessarily show that [she is] not able to do substantial gainful activity." Id.

At step four, the administrative law judge found that plaintiff's work as a receptionist, cashier and stocker was "performed within the past 15 years" and "lasted long enough for the claimant to learn to do the jobs and met the definition of substantial gainful activity." AR 23.  As the commissioner argues, part-time work can be substantial gainful activity.  20 C.F.R. §§ 404.1572, 416.972; Brewer v. Chater, 103 F.3d 1384, 1391 (7th Cir. 1997).  The fact that the administrative law judge found that plaintiff's receptionist job was not presumptive substantial gainful activity and reserved ruling at step one does not mean that his finding regarding her past relevant work at step four was in error.  However, even if the administrative law judge did err, that error was harmless because he also determined that plaintiff could perform past relevant work as a cashier and stocker.

Plaintiff asserts that the administrative law judge failed to determine whether she could perform her past relevant work as a cashier and stocker as she had performed it or as it has been performed in the economy.  Specifically, she contends that although the administrative law judge found that she did not have the residual functional capacity to work at heights or alone, he did not determine whether her past cashier and stocker work would require it.  Plaintiff argues that because she testified that she had to unload crates and

34

stocker shelves, she "probably would have [had] to use at least a step stool."  I am not persuaded by plaintiff's argument.

To determine whether an individual can perform her past relevant work, the administrative law judge may ask the claimant for information about work done in the past or use the services of a vocational expert.  20 C.F.R. §§ 404.1560(b)(2), 416.960(b).  The vocational expert may 1) rely on his knowledge of the physical and mental demands of the past relevant work or 2) offer expert opinion testimony in response to a hypothetical question about whether a person with the claimant's physical and mental limitations can meet the demands of the claimant's previous work.  Id.  In this case, the vocational expert in this case did both.  He testified that he was familiar with the existence, numbers and types of jobs that exist in Wisconsin and identified the skill and exertional levels of plaintiff's past work.  AR 470.  He stated also that the physical demands and duties of those jobs as described in the record and plaintiff's testimony were commensurate with the way those jobs were performed generally.  The administrative law judge then posed a hypothetical to the expert about whether a person with plaintiff's limitations could perform her prior work.  The vocational expert responded "yes" with regard to the receptionist and cashier jobs.

Plaintiff's statement that she may have to work at heights or alone as a cashier or stocker is mere conjecture.  She has not pointed to any evidence that her past work in these positions involved these requirements.  Brewer, 103 F.3d at 1391 (burden on claimant at

35

step four to prove severe impairment prevents performance of past work).  Accordingly, I find that the administrative law judge did not make an erroneous step four determination.

Plaintiff argues that the administrative law judge should not have relied on the expert's testimony because the judge erred in his determination of plaintiff's residual functional capacity.  However, because I find that the administrative law judge made a proper residual functional capacity assessment, he could rely on the vocational expert's testimony that plaintiff could perform her past work as a cashier.

2.  Step five

Although the administrative law judge found plaintiff not disabled at step four of the sequential evaluation process, he went on to make a step five finding.  Relying on the vocational expert's testimony, he found that even if plaintiff could perform only simple, low-stress repetitive work, significant numbers of jobs as a clerk and assembler (both sedentary and light) existed statewide that plaintiff could perform.  Plaintiff disputes this finding, asserting that she could not perform these jobs because of her dizziness, headaches and fatigue.

Because the administrative law judge properly found plaintiff not disabled at step four, any arguments related to his step five determination are irrelevant.  Further, as discussed previously, the administrative law judge did not find the self-reported severity or

36

frequency of plaintiff's dizziness, headaches and fatigue credible.  Therefore, he did not have to evaluate whether these symptoms prevented plaintiff from performing the clerk and assembler jobs identified by the vocational expert.

Finally, plaintiff contends that the administrative law judge failed to comply with his mandatory duty at step five because he did not ask the expert whether his testimony was consistent with the Dictionary of Occupational Titles prior to eliciting jobs available in the state.  Social Security Ruling 00-4p; Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).  Plaintiff does not challenge the judge's step four finding in this regard, admitting that he correctly ascertained whether the vocational expert's testimony regarding her past relevant work was consistent with the Dictionary.  Plt.'s Br. in Supp., dkt. #9 at 37.  Because the administrative law judge's step five finding was unnecessary, any error that he may have committed in relying on the vocational expert testimony at step five was harmless.

## G.  Sentence Six Remand

Plaintiff requests a remand under sentence six of § 405(g) for consideration of evidence that she submitted to the Appeals Council, namely records from the Beloit Area Community Health Center.  To be entitled to a remand under sentence six of § 405(g), plaintiff must show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Evidence

37

is "material" if it gives rise to a "reasonable probability" that the commissioner would have reached a different conclusion had the evidence been considered.  Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).  To be material, new evidence must relate to the claimant's condition "during the relevant time period encompassed by the disability application under review."  Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990).

Plaintiff began mental health treatment on the same date as the administrative law judge issued his decision and therefore were not considered by him.  Plaintiff argues unpersuasively that this evidence is material to the administrative law judge's finding that her  somotoform disorder caused her only mild restrictions of activities of daily living and in maintaining concentration persistence or pace.  Not only do the mental health records concern plaintiff's treatment for depression and fail to address her somtoform disorder, they do not describe her condition during the relevant period (November 15, 2000 through the date of the administrative law judge's decision, January 24, 2007).

Plaintiff argues that she had good cause for not incorporating this evidence in to the record during the administrative proceeding because she did not receive treatment for her mental impairments until January 2007.  The record indicates that plaintiff chose not to seek treatment for her mental impairments.  In January 2006, Dr. Goetzen suggested that plaintiff see a psychiatrist for her anxiety.  However, plaintiff testified at the hearing that she had forgotten about the referral.  I find that plaintiff did not have good cause for not

38

incorporating her mental health in the administrative proceedings.  Plaintiff had the opportunity to seek treatment before almost a year before the hearing and failed to do so.

In sum, because the 1997 mental health records are not material and plaintiff did not have good cause for failing to incorporate this evidence into the record in a prior proceeding, her motion for a sentence six remand will be denied.


ORDER

IT IS ORDERED that plaintiff Tammy Brewster's motion for a sentence six remand is DENIED.  IT IS FURTHER ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff's appeal is DISMISSED.  The clerk of court is directed to enter judgment and close this case.

Entered this 13th day of May, 2008.

BY THE COURT:


/s/

_____
BARBARA B. CRABB
District Judge

39